**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | **REDACTED** |
| **v.** | ) | **Cr. No. 06-0124-02ML** |
| | ) | |
| **ROGER MURRAY** | ) | |

## GOVERNMENT'S SENTENCING MEMORANDUM

The Defendant has filed a sentencing memoranda in support of sentencing, requesting that the Court impose a sentence "sufficient but not greater than necessary," and outside the sentencing guideline range rather than within the Career offender provisions of the United Sentencing Guidelines (U.S.S.G.). The government submits this memorandum in support of its objections. The Defendant is a career offender. The Defendant's history provides no basis for a sentence below the guidelines.

## I. TRAVEL OF THE CASE

The Defendant was arrested on October 3, 2006, after the Rhode Island State Police/Federal Bureau of Investigation HIDTA executed a search warrant at the Defendant's home at 315 Shady Valley Road, Coventry, Rhode Island. On November 1, 2006, a grand jury returned a three count indictment against the Defendant which charged the Defendant with Conspiracy to manufacture methamphetamine, in violation of 21 U.S.C. §841(a)(1) and 21 U.S.C. § 846 (Count 1); Possession of equipment, chemicals, products and materials used to manufacture methamphetamine, in violation of 21 U.S.C. §§843(a)(6) and 843(d)(2) and 18 U.S.C. §2 (Count 2); and Possession a listed chemical, to wit: iodine, as defined in 21 U.S.C. §802, knowing, intending and having reasonable cause to believe the iodine would be used to

manufacture methamphetamine, in a manner other than authorized by 21 U.S.C. §§801 through 904; in violation of 21 U.S.C. §§841(c)(1) and 841(c)(2), and 18 U.S.C. §2 (Count 3). On February 15, 2007, the Defendant pled guilty to all three counts against him in the indictment[1].

## II. FACTS

In September and October of 2006, the Defendant, Roger Murray resided at 315 Shady Valley Road Coventry, Rhode Island. The property also had a large shed located on the northwest front corner of the lot. On October 3, 2006, the State Police/F.B.I. HIDTA, along with the Drug Enforcement Agency Clandestine Laboratory Team executed a search warrant at 315 Shady Valley Road. Mr. Murray was advised of his Constitutional Rights, waived them and admitted that the co-defendant, Gregory Thompson had asked Mr. Murray to accept a package of iodine at 315 Shady Valley Road Coventry. The Defendant admitted that Thompson was extracting ephedrine from a herbal plant in Murray's shed and intended to send the extracted ephedrine to an unknown individual in California. Murray admitted that Thompson had been at the Defendant's house two days earlier extracting the ephedrine. On October 2, 2006, Thompson had asked whether the Defendant had received a package of iodine at his residence. Mr. Murray stated that he was to call Thompson when the package arrived. Mr. Murray then agreed to place a call, under law enforcement supervision, to advise Thompson that the package had arrived. After several calls, arrangements were made to have Mr. Murray meet Thompson at a convenience store on Reservoir Avenue in Cranston, Rhode Island. At this meeting,

---

[1] The co-defendant, Gregory Thompson was charged with an additional count of possessing a listed chemical, to wit: ephedrine, as defined in 21 U.S.C. §802, knowing, intending and having reasonable cause to believe the ephedrine would be used to manufacture methamphetamine, in a manner other than authorized by 21 U.S.C. §§801 through 904; in violation of 21 U.S.C. §§841(c)(1) and 841(c)(2)(Count 4).

members of the HIDTA Task Force could hear some of the conversation between Thompson and the Defendant, who was heard telling Thompson that Murray had the package in the trunk of his car and that Thompson needed to take it from Mr. Murray. Thompson stated that he was unable to take the box right away, but could meet up with the Defendant later to do so. Thompson was then approached by the police and advised of his Constitutional Rights. Gregory Thompson admitted that he had asked Mr. Murray if Thompson could send a package to Murray's residence at 315 Shady Valley Road Coventry, Rhode Island. Thompson admitted that he was attempting to extract ephedrine from a plant in the shed at 315 Shady Valley Road in an attempt to manufacture methamphetamine. Thompson volunteered that there was package of phosphorus located under his bed at his residence at 2043 Elmwood Avenue Warwick, Rhode Island. Members of the DEA Clandestine Laboratory Team seized the package pursuant to a consent to search.

All evidence was seized by the DEA Clandestine Laboratory Enforcement Team and forwarded to the DEA laboratory for testing and identification. Analysis showed that there were 120 capsules of ephedrine, having a net weight of 73.2 grams, containing 6% ephedrine. It is the expert opinion of members of DEA that iodine, phosphorous, ephedrine and all of the previously mentioned items that were seized can be used in the manufacture of methamphetamine. Iodine is a listed II chemical under 21 U.S.C. §802(35)(I). Ephedrine is a listed I chemical under 21 U.S.C. §802 (34)(C).

## III. ARGUMENT

The guideline range for sentencing for this defendant as calculated pursuant to the United States Sentencing Guidelines (U.S.S.G.) is 155 to 188 months. (PSR ¶ 54). While the

guidelines are no longer mandatory, the court must consider them in making a determination regarding a Defendant's sentence.

Personal Background

The Defendant claims that pressure on him to become a professional baseball player was overwhelming and led to substance abuse, which in turn led to his criminal conduct. The government submits that there is nothing in his background that takes him outside the heartland of cases. The Defendant's criminal record is extensive and some of it also post dates his drug treatment programs. Furthermore, while living with his fiancé and their two year old son, the Defendant became involved in a conspiracy to manufacture methamphetamine with co-defendant Gregory Thompson. What makes the Defendant's conduct even more egregious is that he allowed the attempts to manufacture this substance in close proximity to a two year old child; his own son.

Nature of Offense

The government submits that a consideration of the nature of the Defendant's offenses will lead to the conclusion that the guidelines calculated with regard to this Defendant are appropriate. Conspiring with and aiding and abetting someone to manufacture methamphetamine, one of the deadlier and most addictive of drugs, is an extremely serious offense. The fact that this Defendant and his co-conspirator were arrested before Thompson succeeded in the manufacturer is fortunate for the public, but does not negate the Defendant's intent that the crimes be committed.

Minor Role

A minor role is reserved for circumstances where the Defendant is less culpable. U.S.S.G. § 3B1.2. While the government agrees that this Defendant did not actually intend to manufacture the methamphetamine himself, this Defendant did make available his own home to his co-defendant for that purpose; and knew what his co-defendant intended to do. The Defendant was charged with conspiracy and aiding and abetting; not with the actual manufacture itself.

Additionally, as pointed out by the Probation officer, the Defendant's guidelines are based upon the career offender provisions and therefore, a mitigating role decrease does not apply. U.S.S.G. §4B1.1.

Assistance to Law Enforcement

[redacted]

Career Offender Provisions

The Defendant's argument, that he misunderstood the impact of the career offender provisions is without merit. The Defendant does not argue that he is not guilty of the charges. He merely argues that he thought the Career Offender guidelines would not apply to him. The

Career Offender guidelines are within the jurisdiction of Probation; the government has never had any authority to waive those provisions. The Defendant, in pleading guilty, admitted on the record that he understood that not only was the plea agreement not binding upon the Court, but that probation would determine the guideline sentence and any estimate that he might have was only that; an estimate and not binding. The Defendant's criminal history places him squarely within the career offender status and therefore should apply.

## III. CONCLUSION

For the foregoing reasons, the Defendant's motion should be denied.

Respectfully submitted,

UNITED STATES OF AMERICA,

By its Attorneys,

ROBERT CLARK CORRENTE
United States Attorney

/s/ MARY E. ROGERS
MARY E. ROGERS
Assistant U.S. Attorney
United States Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
Tel: (401)709-5000
Fax: (401)709-5001
Mary.Rogers@usdoj.gov

CERTIFICATION OF E-FILING

On this 25th day of May, 2007, I caused the Government's Redacted Sentencing Memorandum to be to be filed electronically and it is available for viewing and downloading from the ECF system.

Electronic notification
Albert E. Medici, Jr. Esq.
1312 Atwood Avenue
Johnston, RI 02919

/s/ MARY E. ROGERS
MARY E. ROGERS
Assistant U.S. Attorney
United States Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
Tel: (401)709-5000
Fax: (401)709-5001
Mary.Rogers@usdoj.gov